IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

BRYAN ATCHARIYAKORNCHAI,          )
                                  )
          Plaintiff,              )
                                  )     Civil Action No. 5:18-cv-00036
     v.                           )
                                  )     By:  Elizabeth K. Dillon
FREDERICK COUNTY SANITATION       )          United States District Judge
AUTHORITY,                        )
                                  )
          Defendant.              )

**MEMORANDUM OPINION**

In this action, plaintiff Bryan Atchariyakornchai has asserted three claims against his

former employer, Frederick County Sanitation Authority (FCSA).  The first two claims allege

discrimination and retaliation based on race and ethnicity in violation of Title VII of the Civil

Rights Act of 1964 as amended, 42 U.S.C. § 2000e (Title VII).  The third claim alleges

discrimination and retaliation in violation of the Virginia Fraud Against Taxpayers Act (VFATA),

Virginia Code § 8.01-216.8.

FCSA moves to dismiss Atchariyakornchai's third claim under Federal Rule of Civil

Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  For the following

reasons, the court will grant FCSA's motion.

I.  BACKGROUND[1]

One June 1, 2006, FCSA hired Atchariyakornchai to work as a chief operator at the

Crooked Run Wastewater Treatment Facility and as an operator at the Parkins Mill facility.  He

worked under the supervision of Henry Sliwinski, a superintendent of both wastewater treatment

facilities (Crooked Run and Parkins Mill).  As a chief operator, Atchariyakornchai was

---

[1]  The court will not recite all of the facts in the complaint because many are not relevant to the pending motion.

responsible for engaging in daily and/or periodic water sampling and testing, application of basic laboratory analysis, and maintenance of various records and backups relating to those functions. (Compl. ¶ 22, Dkt. No. 1-1.) Such testing is required by state and federal administrative regulations. (Compl. ¶ 23.) He was also "presumably supposed to have had supervisory authority over one to two Assistant Operators[] at the Crooked Run plan[sic]." (Compl. ¶ 22.) Nevertheless, Atchariyakornchai alleges that he was given less supervisory discretion and authority than other chief operators.

Approximately one year after Atchariyakornchai was hired, FCSA hired Marcus Alger as an assistant operator trainee. Although Alger was to work under the supervision of Atchariyakornchai, Atchariyakornchai asserts that Alger would disobey his supervisory instructions, and so Atchariyakornchai complained to his own supervisor, Sliwinski. Later, Sliwinski issued a written warning to Atchariyakornchai, stating that he needed to provide more positive feedback and support to Alger. Eventually, on or about July 6, 2016, Sliwinski informed Atchariyakornchai that he was being demoted from chief operator to operator and that Daniel Brode would be taking Atchariyakornchai's place as chief operator. The only explanation Sliwinski provided was that "it would be better for [Atchariyakornchai] and the company." (Compl. ¶ 40.) Much of the complaint details alleged disparate treatment suffered by plaintiff as a result of his race, which he describes as "Asian American of Thai extraction."

According to plaintiff and on information and belief, beginning in approximately February 2016 and continuing through Atchariyakornchai's termination on October 19, 2016, Brode and Alger perpetuated false allegations about plaintiff and agreed to continue to do so, including the false allegation that he falsified a test record. (Compl. ¶¶ 47, 51.)

On or about July 18–19, 2016, Atchariyakornchai found lab sheets performed by his co-worker, Alger, with no data populated. Alger had not recorded a pH level for July 16, nor pH or temperature readings on July 13. Additionally, there was no "out fall observation" of the listed creek on July 2, indicating to Atchariyakornchai that Alger had not gone to the sampling site as he was required to do. Atchariyakornchai asserts that "[t]his type of thing had happened several times in the past, with Alger." (Compl. ¶ 45.) Atchariyakornchai inquired of his supervisors whether they were to continue comparative pH and temperature testing, and he received a reply that all testing was still to be done. When confronted by Atchariyakornchai, Alger claimed that he had completed the testing but had written it down on a separate sheet. (*Id.*)

About three months later, on or about the week of October 3, 2016, Atchariyakornchai went to the designated point for sampling of a creek. Alger and/or other operators had reported that they had taken samples of outflow water from this same site in the days and/or weeks before. Atchariyakornchai claims that when he arrived at the gate that allowed access to the creek, a thick vine had grown over the gate, holding it shut. Atchariyakornchai alleges, therefore, that one or more operators falsified data of creek samplings, even though the recording of such data is a practice required by the FCSA's permit. (Compl. ¶ 48.) Atchariyakornchai informed Brode, his chief operator, that samplings of outflow water were not being taken or analyzed by Alger. Neither Brode nor Sliwinski disciplined or counseled Alger. (Compl. ¶ 49.)

On October 19, Atchariyakornchai informed Brode "that he thought what was happening to him, and his employment, at FCSA, was discriminatory." (Compl. ¶ 51.) Two hours later, Sliwinski informed Atchariyakornchai that Atchariyakornchai needed to attend a meeting at the Parkins Mill plant with Brode and Sliwinski. At this meeting, Atchariyakornchai's employment was terminated for his allegedly falsifying a test record regarding inflow sampling.

Atchariyakornchai asserts that he was not given an opportunity to dispute or prove wrong this allegation and that he did not falsify any records. Plaintiff contends that he told Brode on the day he was fired that he wanted to talk to the Department of Environmental Quality (DEQ) about the circumstances of his firing, and Sliwinski told him to go ahead but that he would not be an employee anymore. (Compl. ¶ 101.)

Atchariyakornchai emphasizes that he was fired while Alger remained employed despite the fact that the outflow testing, which Alger had previously allegedly falsified, is more important that inflow testing. He also asserts that despite the fact that numerous employees cut corners with regard to records, he was the only one fired.

Atchariyakornchai asserts, along with his other claims, that he was treated differently, demoted, and terminated in retaliation for his attempt to stop FCSA from committing fraud against the Commonwealth of Virginia or its agents. He contends that Alger's allegedly falsified records were material to DEQ's decision to allow the permit to continue and/or to not take regulatory action against FCSA. (Compl. ¶ 97.)

## II. DISCUSSION

### A. Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's allegations must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard "requires the plaintiff to articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, i.e., the 'plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). The plausibility standard requires more than "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

In determining whether the plaintiff has met this plausibility standard, the court must accept as true all well-pleaded facts in the complaint and any documents incorporated into or attached to it. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Further, it must "draw[] all reasonable factual inferences from those facts in the plaintiff's favor," *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999), but it "need not accept legal conclusions couched as facts or 'unwarranted inferences, unreasonable conclusions, or arguments,'" *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)).

## B. VFATA Claim Pursuant to Virginia Code § 8.01-216.8

FCSA claims, among other arguments, that Atchariyakornchai has failed to state a claim for a right to recovery under VFATA's anti-retaliation provision because Atchariyakornchai has not engaged in protected activity. They argue that although the "violation" he says he reported is the making of a false "claim," he has not satisfied the definition of "claim" set forth in Virginia Code § 8.01-216.2. In its reply brief, it elaborates on this first argument by noting that plaintiff also fails to allege that he engaged in efforts to stop any violation and that he fails to allege that FCSA was on notice. Plaintiff argues that FCSA misunderstands the nature of "claim" and that he has sufficiently alleged retaliation as required under VFATA. Because the court agrees that plaintiff has not sufficiently alleged that he engaged in protected activity with regard to a claim as defined in VFATA, the court will grant the motion to dismiss the VFATA retaliation claim and will not address FCSA's other arguments.[2]

---

[2] FCSA also argues that it does not fall within the statutory definition of "Commonwealth" within the definition of a "claim" and that plaintiff has failed to comply with the provisions of Virginia Code §§ 8.01-216.4–216.5, which govern qui tam claims, because he has not styled his complaint in the name of the Commonwealth and the attorney general has not been given written notice of the lawsuit or an opportunity to investigate.

Atchariyakornchai brings his claim under the retaliation provision of the VFATA, which states that an employee is entitled to relief if that employee is discharged due to lawful acts done "in furtherance of an action under this article or other efforts to stop one or more violations of this article." Va. Code § 8.01-216.8. To establish a prima facie case of retaliation under the VFATA, a plaintiff must plausibly allege that: (1) he engaged in a protected activity; (2) the employer knew about the activity; and (3) the employer retaliated against him in response. *See Carlson v. DynCorp Int'l LLC*, 657 F. App'x 168, 170 (4th Cir. 2016) (setting forth elements under the Federal Claims Act).[3] Courts typically consider two types of actions to be protected: if the act (1) is taken in furtherance of an action under the [VFATA], or (2) represents other efforts to stop one or more [VFATA] violations. *See Chapins v. Nw. Cmty. Servs. Bd.*, 243 F. Supp. 3d 739, 745 (4th Cir. 2017) (setting forth definitions under the FCA).

Atchariyakornchai asserts that he engaged in protected activity by taking action to stop FCSA from violating Virginia Code § 8.01-216.3 (Compl. ¶ 1), which provides in part that any person who "[k]nowingly makes, uses, or causes to be made or used, a false record or statement **material to a false or fraudulent claim** [emphasis added]" shall be liable to the Commonwealth. FCSA argues that Atchariyakornchai has not adequately demonstrated that he engaged in

---

[3] In determining whether a plaintiff has sufficiently alleged a retaliation claim, the court looks to analogous cases under the Federal Claims Act (FCA). *See, e.g., Lewis v. City of Alexandria*, 756 S.E.2d 465, 487 (Va. 2014) (noting that because the General Assembly adopted the same substantive language in the VFATA as the FCA and amended the VFATA a year after Congress amended the FCA, the General Assembly intended courts to construe the state statute as they construe the federal statute); *Virginia ex rel. Hunter Labs LLC v. Quest Diagnostics Inc.*, 100 F. Supp. 3d 542, 546 (E.D. Va. 2015); *U.S. ex rel. Johnson v. Universal Health Servs., Inc.*, 889 F. Supp. 2d 791, 793 (W.D. Va. 2012). Similar to the VFATA, the FCA includes an anti-retaliation provision which states that an employee is entitled to relief if he is discharged or discriminated against "because of lawful acts done by the employee . . . in furtherance of an action under this section or other efforts to stop one or more violations of this subchapter." 31 U.S.C. § 3730(h). Likewise, in a provision analogous to § 8.01-216.3, the FCA prohibits making fraudulent statements in order to avoid payment to the government. 31 U.S.C. § 3729(a)(1)(G). Specifically, the provision prohibits any person from using a false record or statement to avoid or decrease an obligation to pay money or property to the government. *Id.*

protected activity because he has not satisfied VFATA's definition of "claim," defined as follows:

> any request or demand, whether under contract or otherwise, for money or property, regardless of whether the Commonwealth has title to the money or property, that (i) is presented to an officer, employee, or agent of the Commonwealth . . . .

Va. Code § 8.01-216.2. FCSA asserts that there has been no allegation of a request or demand for money or property by FCSA presented to the Commonwealth or any of its agents.

The court agrees with FCSA that Atchariyakornchai has not sufficiently alleged that he engaged in protected activity. Atchariyakornchai's alleged "protected activity" involves informing his supervisor of the supposed lack of water testing and confronting Alger for his alleged lack of testing. Atchariyakornchai claims that this falsification of documents may have led to the avoidance of fines from the DEQ and that he acted in an effort to stop fraud against the government. This supposed lack of testing reflected on some internal records is not a request or demand for money or property from the Commonwealth of Virginia, and the speculative argument that the documents could have led to avoidance of DEQ fines does not change the fact that there is no "claim" that was false or fraudulent.[4]

Because the court finds that Atchariyakornchai's complaint fails to sufficiently allege that he engaged in protected activity with regard to a claim as defined in VFATA, the court will grant the motion to dismiss the VFATA claim.

---

[4] Moreover, the alleged violation of federal or state regulations is not a sufficient violation of the FCA (or the VFATA) to sustain a retaliation claim. *See U.S. ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 740 (D.C. Cir. 1998) (stating that an employee's investigation of his employer's non-compliance with federal or state regulations was not sufficient to reasonably lead to a viable FCA case); *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1269 (9th Cir. 1996) (stating that even the employee's written complaints of seventy letters and over fifty telephone calls were not considered whistleblowing under the FCA because she was merely attempting to get the school district to comply with federal and state regulations).

### III.  CONCLUSION

For the foregoing reasons, the court will GRANT FCSA's motion to dismiss

Atchariyakornchai's VFATA claim.  An appropriate order will be entered.

Entered: September 30, 2018.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge